IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:11-CV-176-FL

| | |
|---|---|
| BERNADETTE DIANE BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| CAREY WINDERS, Sheriff of Wayne ) | |
| County, in his official capacity as Sheriff of ) | |
| Wayne County; DEPUTY ERIC S. PIERCE, ) | |
| in his individual capacity; and DEPUTY ) | |
| JOHN DOE, in his individual capacity, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on defendants' motion to dismiss (DE # 16), filed June 15, 2011. Plaintiff responded July 20, 2011, and defendants did not file reply. In this posture, the issues raised are ripe for review. For the reasons that follow, defendants' motion to dismiss is granted in part and denied in part.

## STATEMENT OF THE CASE

Plaintiff filed complaint on April 12, 2011, against defendants Deputy John Doe ("Doe"), Deputy Eric S. Pierce ("Pierce"), and Sheriff Carey Winders ("Winders"). Count one claims damages under 42 U.S.C. § 1983 against Doe and Pierce, in their individual capacities, for violations of plaintiff's constitutional rights. Count two seeks damages under § 1983 against Winders in his official capacity. Counts three through seven allege state tort claims against Doe and Pierce in their individual capacities, and against Winders in his official capacity, for assault and battery, false arrest

and false imprisonment, abuse of process, malicious prosecution, and intentional infliction of emotional distress.

Pierce and Winders filed motion to dismiss on June 15, 2011, and plaintiff responded July 20, 2011.

## STATEMENT OF FACTS

The court accepts as true and construes in the light most favorable to plaintiff the following facts: During the period in question, Winders was Wayne County Sheriff and Pierce his deputy. On November 4, 2009, Pierce observed someone other than plaintiff riding a Suzuki Katana motorcycle at a speed in excess of fifteen miles per hour over the posted speed limit. Pierce was unable to apprehend the suspect. Plaintiff, a short, overweight, sixty-two year old woman with disabling neck and back injuries, owned the motorcycle. Between November 4 and November 12, 2009, Pierce twice visited plaintiff's residence and asked plaintiff if her son had been operating the motorcycle on November 4th. Plaintiff responded that she was not home at the time and therefore did not know who had operated the vehicle. During these interviews, Pierce told plaintiff, at least twice, that "he knew she wasn't the one riding the motorcycle [that day]."

On November 12, 2009, someone from the Wayne County Jail phoned plaintiff to say that her son had been arrested and had a laptop computer that belonged to plaintiff. Plaintiff was told that she would need to go to the jail and sign for the laptop in order to retrieve it. Shortly after arriving at the jail, Pierce escorted plaintiff to an interview room wherein he again asked her to name the operator of the motorcycle on the date in question. Plaintiff again responded that she did not know and asked if she needed a lawyer. Pierce left the room for about ten to fifteen minutes and, upon returning, told plaintiff she was free to leave.

2

Soon thereafter, however, Pierce directed plaintiff to return to the building and placed her under arrest for felony fleeing and eluding arrest. At some time that day, Pierce swore an affidavit before a magistrate judge and received a warrant for plaintiff's arrest. Plaintiff was placed in a holding cell under a $1,500 secured bond. Eventually, plaintiff's relative wired funds so that plaintiff could get out of jail. On February 15, 2010, the criminal charges against plaintiff were dismissed due to insufficient evidence. According to the dismissal notice, Pierce could not positively identify the motorcycle operator.

Plaintiff alleges the following damages: violation of her constitutional rights; loss of physical liberty; monetary expenses associated with obtaining bail, legal fees, and court costs; physical pain and suffering; and emotional trauma.

## DISCUSSION

A. Standard of Review

A Rule 12(b)(6) motion to dismiss challenges the sufficiency of a complaint. See Fed. R. Civ. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, the facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'" Robinson v. Am. Honda Motor Co., 551 F.3d 218, 222 (4th Cir. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007)); see also Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). Dismissal is only proper if it appears that the plaintiff can prove no set of facts which would support his or her claim. Mylan Labs. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 2000).

B.  Section 1983 Claims

Plaintiff brings claim under 42 U.S.C. § 1983 in count one against Pierce and Doe in their individual capacities and in count two against Winders in his official capacity. Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. To prevail on a § 1983 claim, plaintiff must show (1) that she was deprived of a federal statutory or constitutional right; and (2) that the deprivation was committed under color of state law. American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).

First, plaintiff must allege deprivation of a constitutional right. Plaintiff alleges that defendants violated her clearly established constitutional rights of freedom from unreasonable seizure of her person, freedom from malicious prosecution, and/or freedom from abuse of process. Plaintiff's § 1983 claim against law enforcement officers for unreasonable seizure, in violation of the Fourth Amendment, is cognizable. Miller v. Prince George's County, MD, 475 F.3d 621, 627 (4th Cir. 2007). However, "[t]here is no such thing as a '§ 1983 malicious prosecution' claim . . . It is not an independent cause of action." Lambert v. Williams, 223 F.3d 257, 262 (4th Cir. 2000). Similarly, "there is no separate § 1983 claim for 'abuse of process.'" McFadyen v. Duke University, --- F. Supp. 2d ----, 2011 WL 1260207, at *34 (M.D.N.C. March 31, 2011) (citing Cramer v. Crutchfield, 648 F.2d 943, 945 (4th Cir. 1981)). See also Santiago v. Fenton, 891 F.2d 373, 388 (1st Cir. 1989) ("[A]buse of process–as a claim separate from a claim that there was no probable cause to make the arrest or institute the prosecution–is not cognizable as a civil rights violation under §

4

1983."). Accordingly, the court analyzes counts one and two as § 1983 claims for unreasonable seizure in violation of the Fourth Amendment.

Next, plaintiff must allege that the deprivation of her constitutional right was committed under color of state law. 42 U.S.C. § 1983. Acts performed by a police officer in his or her capacity as an officer, even if illegal or not authorized by state law, are considered to have been taken under color of law. Monroe v. Pape, 365 U.S. 167, 187 (1961) (overruled on other grounds by, Monell v. Dept. of Soc. Serv., 436 U.S. 658 (1978)). Here, plaintiff alleges that Pierce acted improperly while on duty, and further alleges that Winders, as Pierce's superior, inadequately trained and supervised Pierce. Thus, plaintiff adequately alleges violations under color of law.

1.   Pierce's Qualified Immunity Defense

Pierce asserts a qualified immunity defense against plaintiff's § 1983 claim. Government officials are entitled to immunity from civil damages in suits under § 1983 so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

      a.   Fourth Amendment Unreasonable Seizure of Person

           i.   Violation of a Constitutional Right

Plaintiff claims that her arrest was an unreasonable seizure in violation of the Fourth Amendment. Seizure of an individual without probable cause is unreasonable and violates the Fourth Amendment. Miller v. Prince George's County, 475 F.3d 621, 627 (4th Cir. 2007). Probable

5

cause "exists when, 'at the time the arrest occurs, the facts and circumstances within the officer's knowledge would warrant the belief of a prudent person that the arrestee had committed or was committing an offense.'" United States v. Johnson, 599 F.3d 339, 346 (4th Cir. 2010) (quoting United States v. Manbeck, 744 F.2d 360, 376 (4th Cir. 1984)). Probable cause may be lacking even though the arrest was conducted pursuant to legal process if the arrest warrant arises from a dishonest affidavit. Miller, 475 F.3d at 627. Police officers cannot intentionally lie in warrant affidavits or recklessly include or exclude material information known to them. Id. at 630 (citing Malley v. Briggs, 475 U.S. 335, 344-45 (1986); United States v. Leon, 468 U.S. 897, 922-23 (1984); Franks v. Delaware, 438 U.S. 154, 155-56 (1978)).

To prevail, plaintiff must prove that Pierce deliberately or with a reckless disregard for the truth made material false statements in his affidavit or omitted material facts therefrom. Miller, 475 F.3d at 627. Reckless disregard can be established by evidence that an officer acted with a high degree of awareness of a statement's probable falsity. Id. When viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported. Id. (quoting Wilson v. Russo, 212 F.3d 781, 788 (3d Cir. 2000)) (internal quotation marks omitted). With respect to omissions, reckless disregard can be established by evidence that a police officer "failed to inform the judicial officer of facts [he] knew would negate probable cause." Miller, 475 F.3d at 627 (quoting Beauchamp v. City of Noblesville, Inc., 320 F.3d 733, 743 (7th Cir. 2003)). Allegations of a police officer's negligence or innocent mistake will not provide a basis for a constitutional violation. Franks, 438 U.S. at 171.

Here, plaintiff has pleaded facts sufficient to allege Pierce's violation of her Fourth Amendment right to be free from unreasonable seizure. Pierce's sworn affidavit led the magistrate

judge to issue a warrant for plaintiff's arrest. The facts, considered in the light most favorable to plaintiff, suggest that Pierce either deliberately made false statements in his affidavit or did so with a reckless disregard for the truth. At least twice before November 12, 2009, Pierce told plaintiff that he "knew she wasn't the one riding the motorcycle." Pierce also asked plaintiff, repeatedly, if her son had been operating the motorcycle. These communications suggest that Pierce did not think plaintiff was the suspected motorcyclist. Under these circumstances, a prudent person would not suspect plaintiff of having committed the crime. Pierce's comments to plaintiff that he "knew she wasn't the one riding the motorcycle," and his repeated inquiries regarding plaintiff's son, suggest that he was certain of plaintiff's innocence and therefore deliberately made false statements in his affidavit. At the least, Pierce's encounters with both the suspect and with plaintiff would have given him serious doubts as to the truth of his statements or obvious reasons to doubt the accuracy of the information he reported.

    ii.  Clearly Established Right

Plaintiff must next show that her right to be free from an unreasonable seizure arising out of an officer's false warrant affidavit was clearly established at the time of her arrest. A constitutional right is clearly established if its contours are sufficiently clear so that a reasonable official would have understood, under the circumstances at hand, that his behavior violated the right. Miller, 475 F.3d at 631. The court must define the right "at a high level of particularity." Bailey v. Kennedy, 349 F.3d 731, 741 (4th Cir. 2003) (citing Edwards v. City of Goldsboro, 178 F.3d 231, 250-51 (4th Cir. 1999)).

The Supreme Court has long held that a police officer violates the Fourth Amendment if, in order to obtain a warrant, he deliberately or "with reckless disregard for the truth" makes material

7

false statements or omits material facts. Franks, 438 U.S. at 155; Leon, 468 U.S. at 922-23. A magistrate's issuance of a warrant will not shield an officer when the underlying affidavit includes deliberate and reckless misstatements and omissions. Miller, 475 F.3d at 632. Thus, the Fourth Circuit has held that "the Constitution did not permit a police officer deliberately, or with reckless disregard for the truth, to make material misrepresentations or omissions to seek a warrant that would otherwise be without probable cause." Id. Therefore, plaintiff's right to be free from unreasonable seizure based on an officer's false affidavit is clearly established.

Accordingly, the court denies Pierce qualified immunity with respect to plaintiff's Fourth Amendment claim of unreasonable seizure of person.

2. Section 1983 Official Capacity Against Sheriff Winders

Plaintiff's § 1983 claim against Winders in his official capacity is treated as an action against the Wayne County Sheriff's Office as an entity. Kentucky v. Graham, 473 U.S. 159, 165-166 (1985). A local government entity cannot be held liable under § 1983 on a respondeat superior theory of liability. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978).[1] Instead, to establish liability of the government entity, a plaintiff must demonstrate that (1) a government actor deprived the plaintiff of her federal rights, and (2) the harm was the result of an official policy or custom of the local entity. Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003). As discussed above, plaintiff has sufficiently alleged a violation of her Fourth Amendment right of freedom from unreasonable seizure. The court must next determine whether plaintiff's alleged harm was the result of an official policy or custom. A policy or custom for which a municipality may be held liable can

---

[1] Winders incorrectly argues that plaintiff brings a § 1983 claim against him on a theory of respondeat superior. However, count two of the complaint makes clear that Winders is sued in his official capacity and not on a theory of respondeat superior.

8

arise in four ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifest[s] deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

Id. (internal citations omitted).

Plaintiff asserts that the alleged violation of her constitutional rights – arrest without probable cause – resulted from Wayne County Sheriff's Office's policy of inadequately training its deputies on the basic requirement of probable cause for an arrest. A sheriff's department may be liable for the failure to train its employees only where such failure "reflects 'deliberate indifference' to the rights of its citizens." Doe v. Broderick, 225 F.3d 440, 456 (4th Cir. 2000) (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)). Deliberate indifference may be found where "in light of the duties assigned to specific officers or employees, the need for more or different training is . . . obvious, and the [failure to train] is likely to result in the violation of constitutional rights." Jordan by Jordan v. Jackson, 15 F.3d 333, 341 (4th Cir. 1994) (quoting Harris, 489 U.S. at 390). "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Board of Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 410 (1997). Moreover, for liability to attach, the identified deficiency in a city's training program must be closely related to the ultimate injury. Harris, 489 U.S. at 391.

A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train. Connick v. Thompson, 131 S.Ct. 1350, 1360 (2011). Without notice that a course of training is deficient in a particular respect,

9

Case 5:11-cv-00176-FL Document 27 Filed 10/11/11 Page 9 of 13

decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights. Id. Here, plaintiff has not alleged a pattern among Wayne County police officers to arrest persons without probable cause. Plaintiff alleges only one additional incident in which four deputies "snatched a six month old child from his father's arms and held the child without any legal justification." But this incident, as alleged, does not involve an arrest without probable cause. Furthermore, two instances of disparate misconduct do not constitute a pattern. Therefore, plaintiff has not alleged a pattern of similar constitutional violations.

However, in a narrow range of circumstances, a pattern of similar violations might not be necessary to show deliberate indifference. Connick, 131 S.Ct. at 1361. A single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability. Board of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 409 (1997). For instance, the need to train officers in the constitutional limitations on the use of deadly force may be "so obvious" that failure to do so would constitute "deliberate indifference" to constitutional rights. Harris, 489 U.S. at 390 n.10.

Failure to train police officers regarding the requirement of probable cause for an arrest may fall within the narrow range of Harris's hypothesized single-incident liability. Plaintiff alleges that "the illegal actions of [Pierce] demonstrate that he is completely devoid of adequate training in law enforcement . . . The basic concept that forms the foundation for police action, probable cause, is either unknown to [Pierce] or simply not a consideration in the performance of his duties." Compl.¶ 6.

Plaintiff alleges that Pierce did not fully comprehend the definition, importance, or

10

requirement of probable cause. The need to train officers about probable cause, like the need to train officers in the constitutional limitations on the use of deadly force, is "so obvious" that failure to do so amounts to deliberate indifference to constitutional rights. Harris, 489 U.S. at 390 n.10. At this early stage, plaintiff has sufficiently alleged that Wayne County Sheriff's Office's failure to train amounts to deliberate indifference. Accordingly, plaintiff has stated a §1983 claim against Winders, in his official capacity, for unreasonable seizure in violation of plaintiff's Fourth Amendment rights.

C. State Law Claims

1. Public Officer's Immunity

Pierce asserts an immunity defense against plaintiff's state law claims, which the court interprets as a public officer's immunity defense.[2] Public officer's immunity is not available for intentional torts, Russ v. Causey, 732 F. Supp. 2d 589, 612 (E.D.N.C. 2010), or for corrupt or malicious conduct. Hedgepeth v. Swanson, 223 N.C. 442, 444, 27 S.E.2d 122, 123 (1943). Plaintiff alleges the following state claims against Pierce, all of which include elements of intent and/or malice or corruption: assault and battery, Dickens v. Puryear, 302 N.C. 437, 445, 276 S.E.2d 325, 330 (1981), false imprisonment, Black v. Clark's Greensboro, Inc., 263 N.C. 226, 228, 139 S.E.2d 199, 201 (1964), abuse of process, Edwards v. Jenkins, 247 N.C. 565, 568, 101 S.E.2d 410, 412 (1958), malicious prosecution, Best v. Duke University, 337 N.C. 742, 749, 448 S.E.2d 506, 510 (1994), and intentional infliction of emotional distress, Holloway v. Wachovia Bank & Trust Co., 339 N.C. 338, 351, 452 S.E.2d 233, 240 (1994). Accordingly, Pierce is not entitled to public

---

[2] Pierce does not clearly indicate that he asserts public officer's immunity. Rather, Pierce asserts "governmental/sovereign" immunity. However, public officer's immunity is to be distinguished from governmental or sovereign immunity. Goodwinn v. Furr, 25 F. Supp. 2d 713, 716 n.3 (M.D.N.C. 1998). Sovereign immunity bars actions against public officials sued in their *official* capacities. Russ v. Causey, 732 F. Supp. 2d 589, 610 (E.D.N.C. 2010). Pierce, though, is sued in his individual capacity.

11

officer's immunity with respect to plaintiff's state intentional tort claims.

   2.   Sovereign or Governmental Immunity

Plaintiff alleges the following state law claims against Winders in his official capacity: assault and battery, false arrest/false imprisonment, abuse of process, malicious prosecution, and intentional infliction of emotional distress. Winders argues that the doctrine of governmental/sovereign immunity bars plaintiff's state law claims.

Under North Carolina law, the doctrine of sovereign immunity bars actions against public officials sued in their official capacities. Russ v. Causey, 732 F. Supp. 2d 589, 610 (E.D.N.C. 2010). Sheriffs are considered public officials for purposes of sovereign immunity. Id. Under the doctrine of sovereign immunity, the state and its agencies are immune from suit absent a waiver of immunity. Id. Substantially the same immunity is given to a county and its agencies, absent a waiver, under the rubric of "governmental immunity." Id.

"Accordingly, '[a] Plaintiff bringing claims against a governmental entity and its employees acting in their official capacities must allege and prove that the officials have *waived* their sovereign immunity or otherwise consented to suit; by failing to do so, the Plaintiff fails to state a cognizable claim against either the official or the governmental entity.'" Robinson v. Bladen County Sheriff Department, No. 7:10-cv-146-BO, 2010 WL 4054389, at *4 (E.D.N.C. 2010) (quoting Sellers v. Rodriguez, 149 N.C. App. 619, 623, 516 S.E.2d 336, 339 (2002)). North Carolina allows a sheriff sued in his official capacity to waive immunity in one of two ways: (1) by purchase of an official bond under N.C. Gen. Stat. § 58-76-5 for acts of negligence in the performance of his official duties, or (2) by purchase of liability insurance under N.C. Gen. Stat. § 153A-435. Russ, 732 F. Supp. 2d at 610.

Here, plaintiff has failed to allege a waiver through either of these methods. Furthermore, to the extent a waiver is alleged under N.C. Gen. Stat. § 58-76-5, the party asserting the waiver must join the surety as a necessary party. Robinson, 2010 WL 4054389 at *4. No such joinder has occurred in the present case. Accordingly, plaintiff's state law claims against Winders in his official capacity are dismissed.

D.   Punitive Damages

Winders argues that plaintiff's claims against him for punitive damages should be dismissed. Contrary to Winders's assertion, plaintiff does not seek punitive damages against Winders under 42 U.S.C. § 1983. In addition, as stated above, plaintiff's state law claims against Winders are dismissed. Therefore, Winders's arguments with respect to punitive damages are moot.

## CONCLUSION

For the reasons stated above, defendant's motion to dismiss (DE # 16) is GRANTED in part and DENIED in part. Plaintiff's state law claims against Winders in his official capacity are DISMISSED, while plaintiff's state law claims against Pierce are ALLOWED. Plaintiff's § 1983 claims against Pierce in his individual capacity, and against Winders in his official capacity, are ALLOWED.

SO ORDERED, this the 10th day of October, 2011.

LOUISE W. FLANAGAN
Chief United States District Court Judge